UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Ronald Richard Radke,

Petitioner,

vs.

REPORT AND RECOMMENDATION

Connie Roerich, Commissioner
of Corrections,

Respondent.

Civ. No. 02-858 (ADM/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 27th day of January, 2003.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus. See, Title 28 U.S.C. §2254. The Petitioner has appeared pro se, and the Respondent has appeared by James P. Spencer, Senior Assistant Olmstead County Attorney.

For reasons which follow, we recommend that the Petition for Habeas Corpus be denied.

## II. Procedural Background

The Petitioner is a State prisoner, who is currently incarcerated at the Minnesota Correctional Facility, in Faribault, Minne-

JAN 27 2003
CLERK

sota, where he is serving a 150-month sentence for his conviction, on November 17, 2000, for Second-Degree Felony Murder.[1]

On September 11, 2001, the Minnesota Court of Appeals affirmed the Petitioner's conviction. Minnesota v. Radke, 2001 WL 1034542 (Minn.App., September 11, 2001). Thereafter, on October 24, 2001, the Minnesota Supreme Court denied the Petitioner's request for review. The Petitioner filed this current Petition for Habeas relief on April 23, 2002.[2] Title 28 U.S.C. §2254 provides for Habeas relief for persons who are in custody, pursuant to a State Court Judgment, if that custody is in violation of the Constitution, laws, or Treaties, of the United States.

In his Petition, the Petitioner alleges that the Trial Court erred in giving an "aiding and abetting" Jury Instruction, when the criminal Complaint against him contained no such charge. The Petitioner claims that, were it not for this erroneous instruction, he would not have been convicted of Felony Murder, as no person was

---

[1]The Jury also found the Petitioner guilty of Manslaughter in the First Degree, and Assault in the Fifth Degree, but the Trial Court, as required, dismissed those lesser included charges.

[2]The Petitioner actually cited Article 1, Section 9, Clause 2, of the United States Constitution, as providing a jurisdictional basis for our review of his Petition. That clause states, in part, that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended." However, as we have previously noted, Title 28 U.S.C. §2254 provides this Court with its jurisdiction over Petitioner's claims, and we have indulgently construed his submissions as a Petition under that Statute.

ever convicted of the predicate felony. According to the Petitioner, the giving of that Jury Instruction amounted to a violation of his Due Process rights, because it improperly relieved the State of its burden to prove the essential elements of the charge of Felony Murder. In addition, the Petitioner argues that the Trial Court's instruction was a violation of his rights as protected under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, because it denied him his right to know the nature of the accusations against him, as well as his right to present a defense to aiding and abetting. As a result, he claims that his Due Process right to a fair Trial was denied.

The Respondent argues that, under Minnesota law, aiding and abetting is not a separate charge and, accordingly, an aiding and abetting instruction may be given, even when that charge has not be enumerated in the criminal Complaint. According to the Respondent, Federal law similarly provides that aiding and abetting is an implied alternative charge to every expressly charged Count, and need not be stated specifically, in the Complaint, against a criminal defendant. Therefore, the Respondent urges that the Jury Instruction did not violate clearly established Federal law, and that the Petition should be denied.

II. Factual Background

On April 22, 2000, Nicholas Griggs ("Griggs"), and Nick Fuchsel ("Fuchsel"), both of whom were students at John Marshall High School ("JMHS"), in Rochester, Minnesota, went out for the evening in Griggs's car. They met up with three other JMHS students -- Blake Warner ("Warner"), James Blake ("Blake"), and Joshua Andrist ("Andrist") -- who were riding in Warner's car. They decided to follow each other to Silver Lake in order to play tag.

Later that night, the Petitioner, and Erik Paulsen, ("Paulsen"), both of whom were also JMHS students, and were out in Paulsen's vehicle, saw Griggs's car. Earlier that same day, Paulsen had threatened to beat Griggs up, apparently because he suspected that Griggs had been stealing from JMHS students, on behalf of a local gang, known as the "Master Players." The Petitioner held similar beliefs about Griggs. When he saw Griggs, Paulsen pointed him out to the Petitioner, and suggested that they "go f--k with him." Paulsen, and the Petitioner, threw cans at Griggs's car, and stopped Paulsen's vehicle in front of Griggs' car, forcing Griggs to stop. Warner's car also stopped. The Petitioner jumped into the back of Griggs's car, and instructed him to "shut up," and to drive to Indian Heights Park. Paulsen told the occupants of Warner's car that they were going to Indian Heights Park to "throw Nick Griggs into a pole."

All of the individuals then proceeded to Indian Heights Park, with the Petitioner remaining in Griggs's car so as to ensure Griggs's arrival at the park. Once there, Paulsen and the Petitioner ordered Griggs out of his car. Fuchsel, Warner, Blake, and Andrist gathered together, some distance from the Petitioner, Paulsen, and Griggs. Paulsen put his hands underneath Griggs's arms, picked him up, and tossed him at a sign pole. Griggs hit his left shin on the pole, and then fell on his hands and forearms, into the grass. Paulsen walked away, commenting that Griggs "was 'too small' to hit."

The Petitioner began to yell at Griggs, about his alleged association with the Master Players, and stated that, if Griggs wanted to act like a Master Player, then he would be treated like one. Griggs attempted to back away, toward the adjoining woods, but the Petitioner advanced. When the Petitioner caught up to Griggs, at the edge of the woods, he punched Griggs on the left side of his head. Although the Petitioner testified that he had punched Griggs on the jaw, other witnesses thought the blow had landed near Griggs's left temple, and had described the blow as having made a loud snapping noise, like that of a tree branch breaking. The blow knocked Griggs to the ground, where he stayed for approximately one minute. When he got up, Griggs appeared

dazed, and held the side of his head. The Petitioner ordered Griggs to leave, and Griggs drove off alone.

The Petitioner, and Paulsen, left the park and went to a party, where the Petitioner was heard bragging about having hit Griggs. The Petitioner also described the sound of the punch as that of a branch snapping. Griggs arrived home approximately ninety minutes after he left the park. He told his mother he was very sick. He vomited, complained of severe head pain, and went to bed. When his mother checked on him an hour later, she found him non-responsive, with his hands tightly clenched on his chest, and his body rigid. Griggs was shaking, and white foam appeared at his mouth.

An ambulance was called, and a serious head injury was immediately suspected. At the hospital, the doctors found a large epidural hematoma -- "a collection of clotted blood between the inner surface of the skull and the brain covering, which normally adheres to the inner surface of the skull" -- on the left side of Griggs's head. The doctors performed emergency surgery in order to release the pressure that the hematoma was causing within Griggs's skull, and found multiple blood clots, and an active hemorrhage. Despite the surgery, Griggs died fifteen hours later. At the autopsy, the coroner did not find any injury in the area of Griggs's jaw, but found trauma induced contusions, and fractures, a torn artery, and

two blood clots, near Griggs's left temple. The coroner concluded that Griggs had died from the consequences of an epidural hematoma, which was caused by a blunt force trauma to his head. At the Petitioner's Trial, two doctors testified that the trauma could have been caused by a bare-fisted punch to the side of Griggs' head.

Investigating officers interviewed the Petitioner, who admitted most of the events of his encounter with Griggs, but maintained that he had struck Griggs on the jaw, and not on the temple. Officers examined the crime scene, and were unable to locate any object upon which Griggs might have struck his head, when Paulsen had pushed him to the ground. The Petitioner was charged with Second Degree Felony Murder,[3] and First-Degree Misdemeanor Manslaughter.

The Petitioner's Trial extended from November 7, through 17, 2000. At Trial, the State's primary theory was that the Petitioner's punch had caused Griggs's death, and that Paulsen's assault of Griggs did not result in any head injury. [T. 625-26].[4] The primary defense, which was asserted by the Petitioner, was that

---

[3]The underlying felony was an assault. [T. 676].

[4]We have largely drawn our statement of the facts from the Minnesota Court of Appeals decision. See, Minnesota v. Radke, 2001 WL 1034542 (Minn.App., September 11, 2001). When, in the course of our recital of the facts, we employ a "T." citation, this is to identify a page in the Trial transcript, containing a fact not disclosed in the opinion of the Court of Appeals.

Paulsen's assault on Griggs could have caused Griggs's death. [T. 652-53]. At the close of the Trial, over the Petitioner's objection, the Jury was instructed that it could find the Petitioner guilty either as a principal, or as an aider and abettor. Defense counsel argued that the Petitioner was prejudiced by that instruction, because aiding and abetting was not charged in the Complaint against the Petitioner and, had it been, the Petitioner would have put on a different defense. [T. 586-88]. In overruling that objection, the Trial Court found that Minnesota law did not require aiding and abetting to be separately charged in a Complaint, and that defense counsel was aware that the State could request such an instruction if the defense were to argue that Paulsen may have caused Griggs' death. [T. 591, 597-98].

The Jury found the Petitioner guilty on all counts. As required, the Trial Court vacated the lesser included offenses, and then sentenced the Petitioner to the presumptive guideline sentence for Felony Murder. On appeal, the Minnesota Court of Appeals considered the Petitioner's Jury Instruction argument, and found that the Petitioner's "'substantial rights' [we]re not prejudiced by the inclusion of an aiding and abetting instruction where not charged," and affirmed his conviction. Minnesota v. Radke, supra at *4.

IV. Discussion

In 1996, Congress restricted the scope of a Federal Court's review of Habeas Petitions, when the underlying claims were adjudicated in State Court. See, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996). A Federal District Court's authority, to vitiate State Court decisions through the grant of a Writ of Habeas Corpus, is now limited to a narrow class of claims, which have been fully exhausted in the State Courts, and which involve an adjudication that either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

Title 28 U.S.C. § 2254(d).

In a recent Supreme Court decision, the Court explained that the "contrary to," and "unreasonable application" clauses of Section 2254(d)(1), present two separate grounds on which a Federal Court may grant Habeas relief to claims adjudicated in the State Courts. Williams v. Taylor, 529 U.S. 362 (2000). The Court went on to instruct, as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrive[d] at a conclusion opposite to

> that reached by [the Supreme Court] on a question of law or if the state court decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case.

Id. at 413.

The Court further explained, that a consideration of a State Court's decision under the "unreasonable application" clause, requires a Federal Court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id.

Thus, under this heightened standard of review, Federal Courts "may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly," but "[r]ather, that application must also be unreasonable." Id.; see also, Siers v. Weber, 259 F.3d 969, 972-73 (8th Cir. 2001)(examining the impact of Williams on Habeas proceedings); Newman v. Hopkins, 247 F.3d 848, 850-51 (8th Cir. 2001); Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000).

As a consequence, Williams affirmed the distinction, which had previously been drawn by several Circuit Courts, that the "contrary

to" clause was to be used in cases addressing pure questions of law, whereas the "unreasonable application" clause addressed mixed questions of fact and law. See, Evans v. Rogerson, 223 F.3d 869, 872 (8th Cir. 2000)(the "in custody" determination for Miranda purposes is a mixed question of law and fact that is properly reviewed under the "unreasonable application clause of §2254(d)(1)"); Becerrill v. Stearns, 2001 WL 1669398 *3 (7th Cir., Dec. 14, 2001) (District Court improperly analyzed question of fact under "unreasonable application" clause, believing it to be a mixed question of fact and law); see also, Neelley v. Nagle, 138 F.3d 917, 924 (11th Cir. 1998), cert. denied, 525 U.S. 1075 (1999); Sweeney v. Parke, 113 F.3d 716, 718 (7th Cir. 1997); Drinkard v. Johnson, 97 F.3d 751, 767 (5th Cir. 1996). Therefore, when a petitioner argues that the State Court improperly applied clearly established Supreme Court law to a particular set of facts, the Federal Courts may not grant a Writ absent a finding that such an application was unreasonable.

Additionally, Section 2254(e)(1) retains a presumption of correctness for all purely factual determinations, which are rendered by a State Tribunal, and which can, as a result, only be rebutted by the production of clear and convincing evidence to the contrary. Despite this presumption, Section 2254(d)(2) authorizes the issuance of a Writ if the State Court Judgment "resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the state court proceeding." Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001); McDonald v. Bowersox, 101 F.3d 588, 592 (8th Cir. 1996)("We presume state court findings of fact to be correct in habeas proceedings unless the petitioner establishes, the respondent admits, or the record shows otherwise."), cert. denied, 521 U.S. 1127 (1997). Thus, "[f]actual findings by the state court 'shall be presumed to be correct,' a presumption that will be rebutted only 'by clear and convincing evidence.'" Kinder v. Bowersox, supra at 538, citing Title 28 U.S.C. §2254(e)(1).

A. The Aiding and Abetting Instruction.

The issue presented, here, is purely one of law, for the Petitioner contends that the State Trial Court wrongfully amended the Complaint against him, at the close of Trial, so as to allege an offense which had not been previously asserted, thereby denying him notice of the accusations against him, and depriving him of his right to defend against those accusations. The Petitioner complains that his rights, as protected by the Fifth, Sixth, and Fourteenth Amendments to the Constitution, were violated. Since his challenge raises a pure matter of law, he must show that the asserted error was contrary to clearly established Federal law, as determined by the Supreme Court of the United States.

1. Standard of Review. The Fifth Amendment to the United States Constitution provides, in pertinent part, that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." As a result of this guarantee, "it has been the rule that after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." Stirone v. United States, 361 U.S. 212, 215-16 (1960). There are two types of modifications to Indictments: amendments which work to change the charging terms, in the Indictment, which are *per se* violations of the Fifth Amendment; and variances, which arise when the charging terms are left unchanged, but the evidence offered at Trial proves facts that are materially different from those alleged in the Indictment, and which do not constitute *per se* violations of the Fifth Amendment. United States v. Stuckey, 220 F.3d 976, 981 (8th Cir. 2000); United States v. Novak, 217 F.3d 566, 574 (8th Cir. 2000).

Persons, such as the Petitioner, who are prosecuted by a State, rather than the Federal Government, have no Fifth Amendment guarantee to be charged by an Indictment. See, Branzenburg v. Hayes, 408 U.S. 665 (1972). Accordingly, the Fifth Amendment guarantee to an Indictment by a Grand Jury is inapplicable, and instead, "[a] prejudice analysis would have to be performed to deter-

mine whether a defendant's Fourteenth Amendment due process or notice rights were materially affected." United States v. Stuckey, 220 F.3d 976, 981 n. 5 (8th Cir. 2000), citing Lucas v. O'Dea, 179 F.3d 412, 417 (6th Cir. 1999)(distinguishing State prisoner Habeas Petitions from appeals from Federal prosecutions). Since the Petitioner was convicted upon prosecution by the State of Minnesota, we undertake a due process analysis.

"[A] person's [Sixth Amendment] right to reasonable notice of the charge against him * * * is incorporated in the Fourteenth Amendment to the United States Constitution and thus cannot be abridged by the states." Goodloe v. Parratt, 605 F.2d 1041, 1045 (8th Cir. 1979). The Supreme Court has held, that "[n]o principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." Cole v. Arkansas, 333 U.S. 196, 201 (1948). Accordingly, "fair notice due process claims are cognizable in habeas corpus" petitions. Franklin v. White, 803 F.2d 416, 417 (8th Cir. 1986). However, even if the criminal defendant was not given fair notice of the specific charges against him, in the Complaint by which he was charged, so long as that defendant "is actually notified of the charge, due process requirements may be

met, even if the [charging instrument] is deficient." Goodloe v. Parratt, supra at 1045.

2. Legal Analysis. According to the Petitioner, the Trial Court effected an unlawful, constructive amendment to his Complaint when it provided the Jury with an aiding an abetting instruction. We cannot agree, and find no error arising from the instruction given by the State Court. In State v. Ostrem, supra at 917, the Minnesota Supreme Court confronted an argument similar to that advanced by the Petitioner, when the defendant, there, was charged with Second-Degree Burglary or Theft, but was convicted of aiding and abetting those crimes. On appeal, the defendant argued that the Court had committed an error in submitting the case to the Jury, under an aiding and abetting theory, even though such a charge was not contained in the criminal Complaint against him. Id. at 922. There, as here, the defendant argued "that the trial court did not have the authority to sua sponte 'amend' the complaint after the trial had begun," and that, even if it had such authority, it had resulted in his being substantial prejudice, in violation of his Due Process rights.

At the start of its analysis, the Court expressed its disagreement with the defendant's contention, that the aiding and abetting instruction constituted an amendment to his Complaint but, for the sake of argument, the Court accepted that assertion. The

Court then proceeded to Rule 17.05, Minnesota Rules of Criminal Procedure, which provides that "[t]he court may permit an indictment or complaint to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." The Court noted that a two-step analysis was employed in determining whether an amendment was proper under Rule 17.05.

First, a determination was required on whether the giving of the aiding and abetting instruction constituted a charge against the defendant for an additional or different offense. The Court concluded that it did not, and found it "undisputed that aiding and abetting is not a separate substantive offense," id. at 922; citing State v. Britt, 156 N.W.2d 261, 263-64 (1968), State v. Alexander, 185 N.W.2d 887, 890 (1971), and State v. Ortlepp, 363 N.W.2d 39, 45 (Minn. 1985), and that, as such, a "jury may convict the defendant of aiding and abetting despite the absence of 'aiding and abetting' language in the complaint." Id., citing State v. Lucas, 372 N.W.2d 731, 740 (Minn. 1985). As a result, the Court held that, since aiding and abetting is not a separate or additional charge, to the substantive crimes of which the defendant had been originally charged, the aiding and abetting instruction did not violate the first prong of the Rule 17.05 analysis.

As a result, the Court proceeded to the second prong, which required a consideration of whether the defendant's substantial rights had been prejudiced, nonetheless, by the instruction. The defendant there, as the Petitioner does here, argued that "his due process rights were violated because the aiding and abetting instructions deprived him of an opportunity to prepare an effective defense." Id. at 923. The Court disagreed, noting that it had held, in Gerdes v. State, 319 N.W.2d 710. 712 (Minn. 1982) that, under Rule 17.05, "in order to prejudice the substantial rights of the defendant, it must be shown that the amendment added or charged a different offense." Under that holding, the Court, in Ostrem, concluded that, because aiding and abetting did not constitute a substantive offense, it could not constitute a separate or different charge and, therefore, could not prejudice the defendant's substantial rights.

Under Federal law, just as under Minnesota law, aiding and abetting is not a separate, substantive offense. See, United States v. McKnight, 799 F.2d 433, 445 (8th Cir. 1986). Accordingly, as is true under Minnesota law, under Federal law, "[i]t is well established that a defendant may be convicted of aiding and abetting even though he was not charged in that capacity," because "[a]iding and abetting is an alternative charge in every count, whether implicit or explicit." United States v. Clark, 980 F.2d

1143, 1146 (8th Cir. 1992); citing United States v. McKnight, 799 F.2d 443, 445 (8th cir. 1986). Accordingly, we conclude that the Petitioner was on notice of the implicit aiding and abetting charge, by the simple fact that he had been charged with the substantive offenses of which he was found to have aided and abetted. Since the aiding and abetting charges were included, as a matter of law, in the Petitioner's Complaint, the State Trial Court did not violate the Petitioner's protected rights of notice, and of presenting a defense, when the Court provided the Jury with an aiding and abetting instruction. As a consequence, we find no merit to this aspect of the Petitioner's Habeas claim.

As we have previously related, under Sixth Amendment jurisprudence, if a criminal defendant "is actually notified of the charge, due process requirements may be met, even if the [charging instrument] is deficient." Goodloe v. Parratt, supra at 1045. Here, the Record reflects that the State's primary theory, at Trial, was that the Petitioner's blow had caused Griggs's death, but the State had also made the Petitioner aware that it was also pursuing an aiding and abetting theory. Prior to Trial, in an Omnibus brief, the State asserted that the evidence was "more than sufficient to establish probable cause that Paulsen and [the Petitioner] aided and abetted each other in forcing Nicholas Griggs to go to Indian Heights Part where they both assaulted him," and therefore, "even

if there was a possibility that [Griggs's] injuries were inflicted by Paulsen's push, [the Petitioner] would still be liable." [T. 597-98]. Although this assertion was not contained in the charging Complaint, the Petitioner was provided actual notice that the State intended to pursue an alternate theory of guilt, on the basis of aiding and abetting, if the Petitioner were to argue, as he did, that it was the Paulsen's assault of Griggs that led to Griggs's death.

In addition, at the commencement of the Trial, James Spencer ("Spencer"), who prosecuted the case on behalf of Olmstead County, addressed the aiding and abetting issue, during the State's opening statement, as follows:

> [W]e expect the question of whether [Griggs's] injuries were caused by Erik Paulsen to come up in this case, and as you've heard testimony will be that Paulsen pushed * * * [Griggs] before [the Petitioner] punched Nick Griggs. Now this would not in itself of course excuse the defendant's actions because he aided and abetted Paulsen in taking Griggs up to the park and was helping in the assault at that time anyway, so it really doesn't matter for that reason.

[T. 42-43].

While Spenser did go on to state that the State did not believe that Paulsen's assault had caused Griggs's death, and that the Petitioner's assault did, the Petitioner was plainly put on notice that aiding and abetting was an alternate theory that might be

pursued to a conviction. In addition, in responding to the Petitioner's Motion for acquittal, at the close of the State's case, the State argued that, even if the evidence did not foreclose a finding that Paulsen's assault of Griggs had caused Griggs' death, the Petitioner could still be found guilty as an aider and abettor. [T. 508-09].

Given the abundant notice provided by the State, that an alternative theory of guilt, based on aiding and abetted, would be pursued at Trial, we conclude that the Petitioner was not denied the right to know the nature of the accusations against him, nor to present a defense to those accusations. Accordingly, we find no reversible error in the aiding and abetting instruction, that had been provided by the State Trial Court, and the Petitioner has failed to present any authority that the State Court's decision is contrary to United States Supreme Court precedent. Therefore, we recommend that this aspect of the Petitioner's prayer for Habeas relief be denied.

B. The "Principal" Element of Felony-Murder and the Sufficiency of the Evidence.

The Petitioner also claims that the aiding and abetting instruction violated his Due Process rights, in that it improperly relieved the State of its burden of proving the essential elements

of the crime of Felony Murder, as no one was ever convicted of that predicate offense -- the one he is said to have aided and abetted.

1. Standard of Review. Under Federal law, all participants in conduct that violates a Federal criminal statute are considered to be principals and, as such, are punishable for that criminal conduct. Standefer v. United States, 447 U.S. 10, 20 (1980). This rule permits accessories of the offense to be convicted, even if the actual perpetrator of the offense has not been convicted, or has even been acquitted. Id. at 19. Therefore, in order to obtain a conviction for aiding and abetting, the prosecution need not prove the actual identity of the principal, provided that the evidence shows that the underlying crime was committed. United States v. Clark, supra at 1146, citing United States v. Horton, 921 F.2d 540, 543 (4th Cir. 1990).

2. Legal Analysis. Clearly, under this standard, the Petitioner's second claim is without merit. The State was not required to convict any person of the felony murder charge, in order to convict that person's accomplice in felony murder. The fact that Paulsen was neither charged, nor convicted of the assault on Griggs, is not a bar to the Petitioner's lawful conviction. See, Miller v. Leapley, supra 586 (finding sufficient evidence to support conviction under either aiding and abetting theory, or on the theory that defendant acted alone, even though the State had not

identified another principal, but had suggested that, if such persons existed, their identity was known only to defendant).

Provided that the evidence presented at the Trial was sufficient to permit the Jury to find that the underlying crime had been committed by someone, the Jury could find the Petitioner guilty of that same crime, by way of being an accomplice. Therefore, more properly framed, the question is whether the State presented sufficient evidence to allow the Jury to find that felony murder, predicated on an assault, had been committed, either by the Petitioner, or by some other person, who had been aided and abetted by the Petitioner. In advancing this issue, the Petitioner holds the "laboring oar," as the facts found by the State Court Jury bear a presumption of correctness, as we have previously related, absent clear and convincing evidence to the contrary. See, Simmons v. Luebbers, 299 F.3d 929, 932 (8th Cir. 2002), pet. for cert. filed (No. 02-1057, January 6, 2003)("In addition, the Anti-terrorism and Effective Death Penalty Act of 1996 provides that relief may not be granted to a person in state custody unless the underlying state proceeding 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."), quoting Sexton v. Kemna, 278 F.3d 808, 811 (8th Cir. 2002), cert. denied, --- U.S. ---, 123 S.Ct. 129 (2002), quoting, in turn, Title 28 U.S.C. §2254(d); Sexton v. Kem-

na, supra at 824 ("[T]he scope of our review for a collateral challenge to the sufficiency of the state's evidence is extremely limited * * *. We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that resolution."), quoting Miller v. Leapley, 34 F.3d 582, 585 (8th Cir. 1994).

The aiding and abetting Jury Instruction, which was given at the Petitioner's Trial, provided as follows:

> The defendant is guilty of a crime committed by another person when the defendant has intentionally advised, hired, counseled, conspired with, or otherwise procured the other person to commit [that crime] * * * The defendant is guilty of a crime, however, only if the other person commits a crime. The defendant is not liable criminally for aiding, advising, hiring, conspiring, or otherwise procuring the commission of a crime, unless some crime is actually committed.

[T. 675-76].

Incorporating these instructions with those for Second-Degree Felony Murder, [T. 676-77], the Jury had to have found that the State had proved that Griggs died, on the date alleged, in Olmstead County; that Griggs's death was caused either by the Petitioner, or by some other person; that the person who caused his death was, at that time, committing the felony offense of assault in either the first or third degree; and that, if the death was caused by some person other than the Petitioner, that the Petitioner had aided and

abetted that person, in committing the predicate assault. [T. 676-77].

We find it patently clear that the State presented sufficient evidence to permit the Jury to reach the Verdict it returned. In reviewing the sufficiency of the evidence, we must thoroughly review the Record in order to determine whether the evidence was sufficient to reasonably permit the Jury to conclude that the defendant was guilty beyond a reasonable doubt of the offense charged. State v. Dominquez-Ramirez, 563 N.W.2d 245, 256, (Minn. 1987). In so doing, we must draw all reasonable inferences in favor of the Verdict. Miller v. Leapley, supra at 585.

In this case, the State presented evidence that, when Paulsen and the Petitioner had first seen Griggs, Paulsen had told the Petitioner that he wanted to "f--k with him," and that the Petitioner was in Paulsen's vehicle when they cut Griggs's car off. The Petitioner helped Paulsen force Griggs to drive to Indian Heights Park, by staying in Griggs's vehicle, by ordering him to "shut up," and by directing him to follow Paulsen to the park. Once the parties arrived at the park, the Petitioner helped Paulsen force Griggs from his vehicle. In addition, the State presented evidence showing that Paulsen assaulted Griggs, by picking him up and throwing him against a sign. The Petitioner was the only other person, who was present at the scene and who was standing by Paul-

sen during that assault. Rather than walking away after that assault, the Petitioner continued the assault on Griggs. The Petitioner's assault of Griggs -- a blow to Griggs' head, caused a loud, snapping noise, and knocked Griggs to the ground. Griggs stayed on the ground for at least one minute, and then got up, holding his head, and appearing dazed.

Given this evidence, the Jury could reasonably have found that the Petitioner caused Griggs's death, while committing an assault on Griggs. However, the Jury could have also reasonably found that the Petitioner actively assisted Paulsen in committing an assault on Griggs, which led to Griggs's death. See, e.g., United States v. Thomas, 469 F.2d 145, 147-48 (8th Cir. 1972)(finding sufficient evidence of aiding and abetting by defendants who were present and condoned actions of, and encouraged, the assailant). The instructions provided to the Jury required that the Jury either find that the Petitioner caused the death of Griggs, while committing a felony assault on Griggs, or that he aided and abetted another in committing a felony assault on Griggs, which led to Griggs's death. Under either scenario, the State was required to prove the predicate felony.

As the State presented sufficient evidence to find the Petitioner guilty of Second-Degree Felony Murder, either as a principal, or as an aider and abettor, we find no reversible error in the

Jury Instruction claimed to have been in error, or in sufficiency of the evidence underlying the Verdict that the Jury returned. As a result, we concur in the result reached by the Minnesota Court of Appeals, in its appraisal of the sufficiency of the evidence, and we recommend that the Petition be dismissed.

NOW, THEREFORE, It is - -

RECOMMENDED:

1. That the Petitioner's Petition for Writ of Habeas Corpus [Docket No. 1] be denied.

2. That the case be dismissed with prejudice.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later February 13, 2003,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than February 13, 2003,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.